## THE MAGDAPUR.

## ALLIED KID CO. v. THE MAGDAPUR et al.

District Court, S. D. New York.
June 19, 1942.

Hatch & Wolfe, of New York City (Eli Ellis, of New York City, of counsel), for libellant.

Lord, Day & Lord, of New York City (Henry C. Blackiston, Jr., of New York City, of counsel), for respondent.

BRIGHT, District Judge.

This libel is to recover for damages to twenty-seven casks of wet salted goatskins, admittedly owned by libellant, shipped on June 29, 1935, by the S. S. Magdapur, from Calcutta to Philadelphia. Libellant claims that because the cargo was not furnished with proper and sufficient ventilation, the skins became damaged by excessive heating. Respondent contends that it has not been shown that the skins were in good condition when shipped, that there is no proof that any damage occurred on board the steamship, and that in the absence of negligence, the bill of lading relieves the respondent from any damage caused by putrification, decay, evaporation, sweat or heating.

It appears from the testimony that the skins were packed under the supervision of the libellant's witness Gubbay, whose recollection is that they were then in good condition. How long after packing they were delivered to the Magdapur is not shown, and there is no testimony as to whether anything occurred in that time which might in any way damage the skins other than that they were stored in a cool place in the godown at Calcutta, some six or seven miles from the pier.

The bill of lading acknowledges receipt of the skins "in good order and condition" but "weight, measure, quality, contents and value unknown". Delivery "in good order" is likewise acknowledged. It is obvious that the receipt for the goods, as well as that for their delivery, referred, and can refer, only to their external condition. Final delivery of the skins was made on September 5, 1935, at Philadelphia. An inspection on September 10, 1935, showed them to be ninety per cent damaged, with a strong odor of ammonia and with hair slip, indicative of a degree of decomposition, and also showing signs of some shrinkage caused by drying out or heating.

The skins were stowed in the forward part of No. 6 hatch tween deck, which, it was shown without dispute, was the best place upon the ship where such skins could be stowed, and farthest from the artificial heat of the boilers and engines. There were also stowed in the same

hold some 434 other casks of the same kind of skins. Those in question bore the mark A.F.C., which undoubtedly referred to A. Forbes & Co., the shipper. There were, in all, 163 casks bearing the same mark. No report of any damage to any of the other casks of skins was received, although they were stowed in the same place and received the same treatment as the twenty-seven in question. Necessarily, in the section of the world where this shipment originated, and through which the ship passed until it reached the Atlantic Ocean, the temperature would be somewhat high. The shipment was made during the monsoon season, when there is much heat and humidity. Temperatures ranged from 84° to 89°, and even on the Atlantic averaged about 80°. The hold where the skins were stowed was ventilated by four ventilators, which were at all times during the voyage uncovered, with back to the wind, and never unshipped. And, whenever the weather would permit, the forward hatches over the hold in question were raised so as to permit further ventilation. There is no evidence that any custom or practice required more ventilation than the ship and its officers gave to this cargo. Aside from the testimony of the libellant's expert, that in his opinion the damage to the skins was caused by exposure to excessive temperatures, there is no evidence that would warrant any such finding, and I do not so find.

One of the libellant's witnesses testified that skins could not go bad if they were in sound condition before they left, and an adequate and proper solution of salt would prevent deterioration by heat during the voyage; and another witness said that if an insufficient quantity of salt was put on the flesh side of the skin, a tendency to decay would be expected.

The bill of lading under which these skins were shipped absolved the respondent from any damage arising directly or indirectly at any time from putrification, decay, loss of weight, evaporation, sweat or heating.

I can come to no other conclusion from the evidence but that the damage here suffered was caused by the inherent quality of the cargo, or the failure properly to pack before shipment. There is no evidence of any negligence on the part of the respondent.

The libel is, therefore, dismissed with costs. Findings may be proposed by the respondent within one week from the date of this decision, and libellant may have three days after service of a copy of the same in which to object to any of them.